2018 PA Super 239

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| COREY M. DURRETT KING | : | |
| Appellant | : | No. 17 WDA 2017 |

Appeal from the PCRA Order December 13, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0010053-2013

BEFORE: BOWES, J., DUBOW, J., and MURRAY, J.

OPINION BY MURRAY, J.: **FILED AUGUST 29, 2018**

Corey Durrett King (Appellant) appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful consideration, we vacate the order dismissing Appellant's PCRA petition and remand this matter to the PCRA court for a hearing consistent with this decision.

We summarize the relevant facts of this case as follows. On June 21, 2013, detectives from the City of Pittsburgh were on a routine patrol in the South Side neighborhood of Pittsburgh. The detectives were in an unmarked vehicle that had lights and a siren. During their patrol, the detectives observed a maroon Lincoln Town Car, operated by Appellant, driving on South 18th Street. Almost immediately thereafter, the detectives observed Appellant's vehicle collide with a motorcycle. The driver of the motorcycle

suffered several fractured ribs, a concussion, a punctured lung, and a back injury.

Upon witnessing the accident, the detectives activated their vehicle's lights and siren. Appellant immediately attempted to flee the scene of the accident in his vehicle at a high rate of speed with the detectives in pursuit. During the pursuit, Appellant violated several traffic laws, which included turning into and speeding through a convenience store parking lot without signaling. Appellant eventually lost control of his vehicle and crashed in the yard of a residential homeowner. The entire vehicle chase lasted approximately ten blocks, during which the detectives observed Appellant throw a clear bag containing crack cocaine out of his vehicle. Throughout the entire chase, the lights and siren of the police vehicle remained activated.

The PCRA court set forth the procedural history of this case:

On October 13, 2014[, Appellant] was convicted, after a jury trial, of fleeing or attempting to elude police, accidents involving death/injury, accidents involving damage and five vehicle code violations. This [c]ourt sentenced [Appellant] to a term of imprisonment of not less than 1½ years nor more than 3 years followed by four years of probation relative to the conviction for fleeing and eluding the police. Relative to the conviction for accidents involving death/injury, this [c]ourt imposed a consecutive sentence of imprisonment of not less than six months nor more than twelve months, followed by four years [of] probation. Relative to the conviction for accidents involving damage, this [c]ourt imposed a consecutive sentence of imprisonment of not less than six months nor more than twelve months, followed by two years [of] probation. No additional penalty was imposed at the remaining counts. The aggregate sentence was a term of imprisonment of not less than 2½ years nor more than 5 years. [Appellant] filed a timely Notice of Appeal. The Superior Court, at 1909 WDA 2014, affirmed the judgment

[of sentence]. A Petition for Allowance of Appeal was denied by the Pennsylvania Supreme Court on November 16, 2015.

On March 2, 2016, [Appellant] filed a *pro se* [PCRA petition.] Counsel was appointed and an Amended Petition for [PCRA] relief was filed on August 11, 2016[.]

PCRA Court Opinion, 6/26/17, at 2.

In his PCRA petition, Appellant alleged that his trial counsel was ineffective for failing to request a jury instruction regarding the defense to the crime of fleeing or attempting to elude a police officer at Section 3733(c)(1) of the Pennsylvania Vehicle Code relating to unmarked police cars. ***See*** 75 Pa.C.S.A. § 3733(c)(1). Appellant argued that trial counsel should have raised this defense because the police vehicle that pursued him was unmarked and the police officers inside the vehicle were in plain clothes.

On November 22, 2016, the PCRA court filed notice of its intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. On December 12, 2016, Appellant filed a timely response to the Rule 907 notice. On December 13, 2016, the PCRA court formally dismissed Appellant's PCRA petition without a hearing. Appellant timely appealed to this Court.

On appeal, Appellant presents the following issue for our review:

Appellant was convicted of Fleeing and Attempting to Elude the Police. At trial, evidence showed that Appellant was pursued by plain-clothes officers in an "unmarked" car, which he claimed implicated a statutory defense and jury instruction that trial counsel never argued under 75 Pa.C.S.[A.] § 3733(c)(1). Consequently[,] he raised a claim of ineffective assistance, which the lower court summarily dismissed. Was the summary dismissal

- 3 -

of that claim based upon an erroneous interpretation of Section 3733(c)(1)?

Appellant's Brief at 4.

Appellant challenges the PCRA court's denial of his ineffective assistance of counsel claim. "This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Rizvi*, 166 A.3d 344, 347 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Garcia*, 23 A.3d 1059, 1061 (Pa. Super. 2011).

In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Id.* (citation omitted). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. *Id.*

"Relating to the reasonable basis prong, [g]enerally, where matters of strategy and tactics are concerned, counsel's assistance is deemed

- 4 -

constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012) (quotations and citation omitted). "Courts should not deem counsel's strategy or tactic unreasonable unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.* (quotations and citation omitted). To demonstrate prejudice in an ineffective assistance of counsel claim, "the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012).

Appellant argues that the PCRA court erred in concluding that trial counsel was not ineffective for failing to raise the defense for fleeing or attempting to elude a police officer set forth in Section 3733 of the Vehicle Code. Section 3733 provides, in pertinent part, as follows:

> **(a) Offense defined.--**Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).
>
> **(c) Defenses.--**
>
> (1) It is a defense to a prosecution under this section that the pursuing police officer's vehicle was not clearly identifiable **by its markings or, if unmarked**, was not occupied by a police officer who was in uniform and displaying a badge or other sign of authority.

75 Pa.C.S.A. § 3733(a), (c)(1) (emphasis added).

In rejecting his ineffective assistance of counsel claim, the PCRA court concluded that Appellant was not prejudiced by trial counsel's failure to request a jury instruction under Section 3733(c)(1). PCRA Court Opinion, 6/26/17, at 4. The court explained:

> The trial court record clearly noted that the police officers pursuing [Appellant]'s vehicle had activated the lights and siren of their vehicle during the pursuit. This [c]ourt believes that the activation of the lights and siren rendered the vehicle "clearly identifiable" as a police vehicle. This conclusion is buttressed by the fact that [Appellant] continued to drive his vehicle almost twice the posted speed limit and over a distance of ten blocks in an effort to avoid capture. This [c]ourt believes the instruction sought by [Appellant] is not supported by these facts and that any request for an instruction would have been denied. Therefore, trial counsel could not be ineffective for failing to request such [the] instruction.

*Id.* at 4-5.

Appellant argues that the evidence reflected that the police vehicle that pursued Appellant was (1) "unmarked" and (2) "was not occupied by a police officer who was in uniform." Appellant's Brief at 21; N.T., 8/12/14, at 54-55, 179. Appellant contends that, given this evidence, the record clearly supported a request for a jury instruction related to Section 3733(c)(1) and trial counsel's failure to request such an instruction resulted in patent prejudice to him. Appellant asserts that the PCRA court wrongly concluded "that the pursuing police vehicle's 'lights and siren' constituted the vehicle's 'markings' making it 'clearly identifiable.'" *Id.* at 20. Appellant maintains that the PCRA court arbitrarily defined the term "markings" to include a vehicle's

"lights and siren" when state regulations specifically identify "lights and sirens" as separate and distinct from a police vehicle's "markings." *Id.* Instead, Appellant argues that a police vehicle's "markings" are the decals and graphics that identify the agency of department of the vehicle. *Id.* at 21.

Appellant's PCRA claim presents a question of statutory interpretation. "Generally speaking, under the rule of lenity, penal statutes are to be strictly construed, with ambiguities resolved in favor of the accused." *Commonwealth v. Lynn*, 114 A.3d 796, 818 (Pa. 2015). Our Supreme Court has explained:

> In matters involving statutory interpretation, the Statutory Construction Act directs courts to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S.[A.] § 1921(a). A statute's plain language generally provides the best indication of legislative intent. In construing the language, however, and giving it effect, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.
>
> The United States Supreme Court also takes a contextual approach in assessing the plain language of statutes and in determining if an ambiguity exists. *See generally King v. Burwell*, [] 135 S .Ct. 2480, 2489 [] (2015) ("If the statutory language is plain, we must enforce it according to its terms. But oftentimes the meaning – or ambiguity – of certain words or phrases may only become evident when placed in context. So when deciding whether the language is plain, we must read the words in their context and with a view to their place in  the overall statutory scheme." (internal quotation marks and citations omitted)); *Yates v. United States*, [] 135 S. Ct. 1074, 1081-82 [] (2015) ("'[T]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.' Ordinarily, a word's usage accords with its dictionary definition. In law as in life,

however, the same words, placed in different contexts, sometimes mean different things." (internal citations omitted)).

When a statute is ambiguous, we may go beyond the relevant texts and look to other considerations to discern legislative intent. Where statutory or regulatory language is ambiguous, this Court may resolve the ambiguity by considering, *inter alia*, the following: the occasion and necessity for the statute or regulation; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes or regulations upon the same or similar subjects; the consequences of a particular interpretation; and administrative interpretations of such statute. [1 Pa.C.S.A. § 1921(c)].

**Commonwealth v. Giulian**, 141 A.3d 1262, 1267-68 (Pa. 2016) (some citations omitted or modified). Additionally, "[w]hen there is an interpretation available that gives effect to all of the statute's phrases and does not lead to an absurd result, that interpretation must prevail." **Commonwealth v. McCoy**, 962 A.2d 1160, 1168 (Pa. 2009).

This case turns on the question of what constitutes a police vehicle's "markings" and consequently, how we are to define a "marked police vehicle" and an "unmarked police vehicle." As Appellant argues, the manner in which the PCRA court in this case interprets Section 3733(c)(1) assumes that a police vehicle's "lights and siren" constitute "markings." This reading of Section 3733(c)(1) permitted the PCRA court to disregard the qualifying language in the provision stating that the defense is applicable where the police vehicle is "unmarked" and "not occupied by a police officer who was in uniform and displaying a badge or other sign of authority." 75 Pa.C.S.A. § 3733(c)(1).

Section 3733(c)(1) provides no definition of the term "markings." Given the context of this case and the statutory provision at issue, the term "markings" has at least two plausible definitions. On the one hand, it is conceivable to conclude, as the PCRA court did in this case, that the term "markings" encompasses a vehicle's "lights and siren," as cars equipped with lights and sirens tend to identify the vehicles as police vehicles to the general public. On the other hand, it is also conceivable to conclude, as Appellant argues, that the term "markings" only encompasses a car's decals and graphics that identify it as a police vehicle. Indeed, the plain language definition of "marking" is "the act, process, or an instance of making a mark" and a "mark" is defined as "a written or printed symbol." *Markings/Mark*, **Merriam Webster's Collegiate Dictionary** 712 (10th ed. 1993). Given the multiple plausible definitions for "markings" in this context, we conclude that the term is ambiguous as utilized in Section 3733(c)(1).

Consequently, because the term "markings" is ambiguous, it is also unclear how the General Assembly intended to define what constitutes a "marked police vehicle" and an "unmarked police vehicle." We may, therefore, turn to the relevant regulatory provisions in the Pennsylvania Administrative Code to ascertain the legislature's intent in utilizing these terms. **See** 1 Pa.C.S.A. § 1921(c).

The provisions of the Pennsylvania Administrative Code governing the use of unmarked police vehicles is 37 Pa. Code §§ 42.1-42.22. Section 42.3

specifically defines the terms "[m]arked police vehicle" and "[u]nmarked police vehicle" as follows:

> *Marked police vehicle*--A police vehicle that is equipped with at least one light-bar assembly **and** displays graphics, markings or decals identifying the agency or department on a minimum of three sides (front, rear, left or right).
>
> *       *       *
>
> *Unmarked police vehicle*--A police vehicle not equipped with a roof mounted light-bar assembly. The vehicle may display graphics, markings or decals, identifying the agency or department.

37 Pa. Code § 42.3 (emphasis added).

Thus, under Section 42.3, a marked police vehicle contains (1) one light-bar assembly **and** (2) decals that identify the agency or department on at least three sides. **Id.** An unmarked police vehicle, under Section 42.3, is (1) not equipped with a roof mounted light-bar that (2) **may** display graphics or decals identifying the agency or department. **Id.**

Accordingly, based on these definitions, we hold that the term "markings" in Section 3733(c)(1) does not include a police vehicle's "lights and siren." Instead, Section 42.3 makes clear that a police vehicle's "markings" only include graphics or decals identifying the department or agency of the vehicle, as the term "light-bar" is referenced separate and apart from any discussion relating to markings, graphics, or decals. **See id.**

Therefore, turning our attention to the facts of this case, we conclude that the PCRA court erred in finding that trial counsel was not ineffective for failing to raise the defense in Section 3733(c)(1). There is no dispute in this

matter that the car at issue did not display any decals or graphics identifying it as a police vehicle. The testimony at trial of the detectives who arrested Appellant unequivocally indicates that they were driving an unmarked police vehicle that only had lights and a siren. N.T., 8/12/14, at 54-55, 179. Additionally, the record reflects that at the time they were pursuing Appellant, the detectives were not in uniform, but were in plain clothes. *Id.* Accordingly, we hold that because the police vehicle that pursued Appellant was unmarked and that the officers inside that unmarked vehicle were not in uniform, Appellant's claim regarding the defense of Section 3733(c)(1) has merit.

We note that the Commonwealth concedes this point:

[T]he Commonwealth acknowledges that Chapter 42 of the Pennsylvania Code, Use of Unmarked Vehicles, contains definitions for unmarked and marked vehicles. In particular, a "marked police vehicle" is one "that is equipped with at least one light-bar assembly and displays graphics, markings or decals identifying the agency or department on a minimum of three sides (front, rear, left or right)," while an "unmarked police vehicle" is one "not equipped with a roof mounted light-bar assembly. The vehicle may display graphics, markings or decals, identifying the agency or department." 37 Pa. Code § 42.3.

Should this Court find the term "markings" to be ambiguous, it may very well be that the police vehicle in this matter was "unmarked" pursuant to the Pa. Code's definition of unmarked police vehicle since it was not equipped with a roof mounted light bar assembly, which would have allowed appellant to raise that portion of § 3733(c)(1)'s defense at trial.

Commonwealth's Brief at 16 n.17.

- 11 -

Furthermore, while one could reasonably conclude, based on the circumstantial evidence in this case,[1] that Appellant was aware that a police vehicle was pursuing him, the plain language of Section 3733(c)(1) does not call for an analysis of what a fleeing perpetrator may have known or not known. Instead, the focus of Section 3733(c)(1) is solely on the vehicle, *i.e.*, whether it is marked or unmarked, and if unmarked, whether the police officers inside the vehicle are in uniform. The PCRA court's interpretation of Section 3733(c)(1) would require us to ignore all of the language in the provision other than whether the car was "clearly identifiable" as a police vehicle, and render the language of the provision relating to "markings" and unmarked vehicles superfluous. This would be contrary to statutory and case law. *See McCoy*, 962 A.2d at 1168 ("We are not permitted to ignore the language of a statute, nor may we deem any language to be superfluous. 1 Pa.C.S. § 1921(a)."). If the General Assembly had desired to make the defense of Section 3733(c)(1) inapplicable based on a police vehicle's activation of its lights and siren, it could have done so.[2]

_____

[1] This evidence includes, as set forth in the facts above, testimony indicating that Appellant fled from the pursuing detectives, who were in a vehicle with its lights and siren activated, at a high rate of speed while violating several traffic laws, and that he threw a clear bag out of the vehicle that contained crack cocaine. *See* N.T., 8/12/14, at 62-63, 66, 73, 102.

[2] We note that our conclusion comports with the notion that police vehicles are not the only type of vehicles that utilize lights and sirens.

We further conclude that Appellant was prejudiced by trial counsel's failure to raise Section 3733(c)(1). Given the clear applicability of Section 3733(c)(1) to this case, there exists a reasonable probability that the outcome of Appellant's trial would have been different had trial counsel raised this defense.

Because Appellant has satisfied both the arguable merit and prejudice prongs of the ineffective assistance of counsel test, we must determine whether Appellant's trial counsel possessed a reasonable basis for not raising the defense for fleeing or attempting to elude a police officer set forth Section 3733(c)(1). The PCRA court, however, dismissed Appellant's PCRA petition without a hearing and consequently, no record exists as to whether Appellant's counsel had a reasonable basis for not raising this defense.

Our Supreme Court has articulated a "strong preference that counsel be heard before being found ineffective":

> In recent years, this Court has expressed a distinct preference for a hearing on counsel's strategy before venturing to hold that counsel lacked a reasonable basis for his or her actions or inactions. *See, e.g.*, *Commonwealth v. Hughes*, [] 865 A.2d 761, 799 (Pa. 2004) (although there did not appear to be a reason for counsel's failure to pursue claim of arguable merit, since there had been no hearing, "we cannot discern whether a reasonable basis existed for counsel's omission. In such circumstance, this Court has declined to divine, in the first instance on appellate review, whether counsel's actions were reasonably based")[.]

> \* \* \*

> The deference to trial counsel that is required under *Strickland* and *Pierce* is a deference that arises from an

- 13 -

> appreciation of the art involved in the practice of law generally, and in the defense function particularly.

*Commonwealth v. Colavita*, 993 A.2d 874, 895-96 (Pa. 2010) (some citations omitted).

Our Supreme Court has further explained that even when "an appellate court, reviewing a cold trial record, cannot prognosticate a reasonable basis for a particular" course of trial strategy, it "does not necessarily prove that an objectively reasonable basis was lacking." *Id.* at 896. We simply cannot "employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." *Commonwealth v. Barnett*, 121 A.3d 534, 540 (Pa. Super. 2015).

Instantly, the PCRA court dismissed Appellant's PCRA petition without a hearing. Thus, were we to determine that trial counsel was ineffective we would be doing so without affording him the opportunity to be heard. *See Colavita*, 993 A.2d at 895-96. Accordingly, we conclude that the most prudent course of action is to vacate the order dismissing Appellant's PCRA petition and remand this case to the PCRA court to conduct a hearing on whether trial counsel possessed a reasonable basis for not raising the defense for fleeing or attempting to elude a police officer set forth Section 3733(c)(1).

Order vacated. Case remanded. Jurisdiction relinquished.

Judge Dubow joins the Opinion.

Judge Bowes files a Concurring/Dissenting Opinion.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/29/2018</u>